```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
ROSA SUAREZ and LIDIA TEREZA LEON                           :
RAXULEU,                                                    :   MEMORANDUM DECISION
                                                            :   AND ORDER
                              Plaintiffs,                   :
                                                            :   20-cv-1464 (BMC)
               - against -                                  :
                                                            :
GAKK RESTAURANT INC. d/b/a                                  :
EMPANADA LOCA, GEORGE                                       :
KONTOLIOS, and TOMMY KESKINIS                               :
a/k/a TOMMY KONTOLIOS,                                      :
                                                            :
                              Defendants.                   :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

In this case under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), plaintiffs Rosa Suarez and Lidia Tereza Leon Raxuleu have moved for "an order of settlement and dismissal." Defendants have not filed an opposition. The motion is granted as set forth below.

## BACKGROUND

The settlement arose out of a post-trial mediation. According to plaintiffs, the parties reached an oral agreement in the days following their mediation session. Then, plaintiffs' counsel emailed defense counsel, requesting defendants' consent to file a letter announcing the settlement to the Court. The letter stated:

> The parties jointly submit this letter to respectfully advise the Court that the parties have arrived at the princip[al] terms of a settlement agreement after a mediation spanning the past few days with Philip Goldstein, Esq.
>
> The parties have agreed to settle this matter as follows: Defendants to pay Plaintiffs the gross sum of $70,000.00 with an initial payment of $7,000.00 and the balance to be paid over 40 equal monthly installments and the Defendants are

> to sign a confession of judgment for $100,000.00 to be held in escrow by Plaintiffs' counsel in the event of default.
>
> The parties would respectfully ask that the current 7/20/21 deadline for post-trial submissions be adjourned *sine di[e]* and the parties permitted until on or before July 30th, 2021 to submit a fully executed agreement and motion for fairness review.

In response to the email, defense counsel wrote: "I have read your Letter Motion and agree to those terms and ask you to submit it to the Court for approval. Thank you." Defense counsel typed his name at the bottom of the email.

Plaintiffs' counsel filed the letter motion. The Court adjourned the deadlines for post-trial submissions and set a deadline for the parties to file an agreement for fairness review under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015). The parties proceeded to draft a "long form agreement."

Then the problems began. Plaintiffs claim that one of the individual defendants, George Kontolios, refused to sign the agreement on two occasions. He then signed the confession of judgment on behalf of the restaurant, but he crossed out the word "individually" below the signature line on the confession. Plaintiffs also report that the other individual defendant, Tommy Keskinis, has "declined to sign except by counsel." These actions, plaintiffs say, are designed to "create a false ambiguity about the scope of their agreement." Plaintiffs have thus filed the instant motion.

## DISCUSSION

**I.    Whether the Parties Reached a Settlement**

"A settlement agreement is a contract that is interpreted according to general principles of contract law." Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007). Accordingly, "basic principles of contract law dictate whether . . . the parties have entered into a binding agreement." Scalia v. Agave Elmwood Inc., 458 F. Supp. 3d 161, 167 (W.D.N.Y. 2020). "Once a court finds

2

that parties reached a settlement agreement, the prevailing view is that such agreement is binding on all parties, even if a party has a change of heart between the time of the agreement . . . and the time it is reduced to writing." Oparah v. N.Y.C. Dep't of Educ., No. 12-cv-8347, 2015 WL 4240733, at *4 (S.D.N.Y. July 10, 2015) (quoting another source) (collecting cases).[1]

"[T]o have a binding settlement agreement, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." Delyanis v. Dyna-Empire, Inc., 465 F. Supp. 2d 170, 173 (E.D.N.Y. 2006). Under this framework, various courts have concluded that binding settlement agreements can emerge through email exchanges. See Scheinmann v. Dykstra, No. 16-cv-5446, 2017 WL 1422972, at *6 (S.D.N.Y. Apr. 21, 2017); Forcelli v. Gelco Corp., 109 A.D.3d 244, 251, 972 N.Y.S.2d 570, 575-76 (2d Dep't 2013). Indeed, emails often contain "a classic offer and acceptance." Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, No. 04-cv-1621, 2005 WL 1377853, at *4 (S.D.N.Y. June 9, 2005). So "the controlling factor" is often "whether a court has evidence of the parties' intent to be bound." Est. of Brannon v. City of New York, No. 14-cv-2849, 2015 WL 13746664, at *4 (S.D.N.Y. Oct. 19, 2015), report and recommendation adopted, 2016 WL 1047078 (S.D.N.Y. March 10, 2016).

To discern intent, courts have turned to the four factors from Winston v. Mediafare Entertainment Corp., 777 F.2d 78 (2d Cir. 1985). See, e.g., Scheinmann, 2017 WL 1422972, at *4. The factors are:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

---

[1] For cases arising under both state and federal law, the Second Circuit has not decided "whether New York or federal common law determines whether the parties reached a settlement," though the court has observed that "there is no material difference between the applicable state law or federal common law standard." Ciaramella v. Reader's Dig. Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997).

Winston, 777 F.2d at 80. These factors "guide the inquiry regarding whether parties intended to be bound by a settlement agreement in the absence of a document executed by both sides." Ciaramella, 131 F.3d at 323.[2]

Here, the factors show that the parties intended to be bound by the terms in the email. First, defendants never expressly reserved the right not to be bound absent a final, executed agreement. This factor "is the most important," especially where, as here, "[t]he emails constitute a classic offer and acceptance, contain all the terms of the agreement, and evidence the intent that the parties had a deal." Scheinmann, 2017 WL 1422972, at *4 (quoting Hostcentric Techs., 2005 WL 1377853 at *7) (cleaned up).

Second, plaintiffs partially performed their end of the deal. Their consideration was ceasing to prosecute the lawsuit. Plaintiffs began providing that consideration when they filed their letter motion, which asked the Court to suspend the post-trial briefing schedule. That suspension was no small matter. At the bench trial, defendants essentially conceded that they failed to provide wage statements and wage notices under the NYLL. That concession would require a finding of liability, and that finding would trigger the statute's fee-shifting provisions. Those fees, in turn, would significantly increase the judgment. By forestalling that judgment, plaintiffs provided valuable consideration and partially performed their obligations under the settlement agreement. Cf. Est. of Brannon, 2015 WL 13746664, at *6 (concluding that suspending the litigation and taking action "to formalize settlement" could "[a]rguably" constitute partial performance).

---

[2] Although the factors generally address the formation of oral contracts, see Winston, 777 F.2d at 80, various courts have applied them when addressing settlement agreements reached via email, see Scheinmann, 2017 WL 1422972, at *4; Est. of Brannon, 2015 WL 13746664, at *5; Delyanis, 465 F. Supp. 2d at 175; Hostcentric Techs., 2005 WL 1377853, at *6.

4

The third factor, "whether all of the terms of the alleged contract have been agreed upon," also favors plaintiffs.  "The Second Circuit has clarified that the third Winston factor should evaluate whether the parties have agreed 'on all *material* terms.'"  Est. of Brannon, 2016 WL 1047078, at *3 (quoting Ciaramella, 131 F.3d at 325) (emphasis in Est. of Brannon).  Here, the emails contain the material terms of the settlement.  They detail a comprehensive resolution to the litigation: plaintiffs would agree to settle the case for a specific amount, defendants would provide that amount by making an initial payment and then 40 monthly installments, and defendants would sign a confession of judgment in the event of default.  Moreover, the emails reflected the material terms of the oral agreement that the parties reached after mediation, defendants consented to plaintiffs' filing the letter motion, and defendants later consented to a motion for an extension of time to file the Cheeks motion and the fully executed agreement.  In these circumstances, "there is no evidence that . . . any material term remained to be negotiated" following the email exchange.  Est. of Brannon, 2015 WL 13746664, at *6; see also Delyanis, 465 F. Supp. 2d at 176 (emailing a mediator that the matter had settled was evidence of the intent to be bound); Hostcentric Techs., 2005 WL 1377853, at *4 (reporting to the court that the matter had settled was evidence of the intent to be bound).

The final factor is essentially neutral.  It's true, most settlements are committed to writing in a final agreement executed by the parties.  But when the parties memorialize an oral agreement in a "confirmatory writing," that writing "mitigate[s] the import of the fourth factor under a Winston analysis."  Pers. Watercraft Prod. SARL v. Robinson, No. 16-cv-9771, 2017 WL 4329790, at *9 (S.D.N.Y. Sept. 1, 2017).  Here, therefore, "the fact that the [email] exchange was written strengthens its power to bind."  Est. of Brannon, 2015 WL 13746664, at *5.  And "[s]ince the Winston test is designed to determine if a settlement agreement is binding

absent a formally executed agreement, it would be a strange test if the fourth factor always favored finding no agreement on the ground that settlement agreements usually are written." Hostcentric Techs., 2005 WL 1377853, at *9.[3]

Having considered the four Winston factors, I find that the parties intended to be bound by a settlement agreement as outlined in the emails, even without a final document executed by both sides. Because the emails also show an offer, acceptance, consideration, and mutual assent, I next find that, when defense counsel replied to the email from plaintiffs' counsel, the parties entered into a binding settlement agreement. The settlement will be implemented and approved as follows:

1. Defendants shall pay plaintiffs the sum of $70,000 by paying to plaintiffs' counsel (a) $7,000 within 10 days of service of a copy of this Order on defendants' counsel and (b) 40 equal monthly installments on the first of each month following entry of this Order, until the remaining balance is paid; and

2. Should defendants fail to make any payment set forth in the preceding paragraph, plaintiffs' counsel shall submit an affidavit to the Court so stating, upon the filing of which the Court will enter judgment against defendants, jointly and severally, in the amount of $100,000.

The Court shall retain jurisdiction to enforce the terms of this settlement.[4]

---

[3] It makes no difference that defense counsel, and not defendants, signed the email. Although "the decision to settle a case rests with the client" and the client "does not automatically bestow the authority to settle a case on retained counsel," the "unique nature of the attorney-client relationship" and the "public policy favoring settlements" allow courts to "presume[] that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so." Kochan v. Schawbenbauer, No. 1:17-cv-452, 2020 WL 8812836, at *4 (W.D.N.Y. March 10, 2020) (quoting another source). With no opposition, defendants have not offered any reason to stray from that presumption. See Delyanis, 465 F. Supp. 2d at 174-75 (holding that an attorney entered into a settlement agreement where the attorney "attended [a] mediation, provided representation to the [p]laintiff and affirmatively agreed to the settlement on behalf of the [p]laintiff").

[4] I will decline the request to enter a "settlement judgment" under Janus Films, Inc. v. Miller, 801 F.2d 578 (2d Cir. 1986), as the parties did not settle on the record in open court. Cf. Huertas v. E. River Hous. Corp., 813 F.2d 580, 582 (2d Cir. 1987).

**II.     Whether the Settlement is Fair and Reasonable**

Under Cheeks, a district court must assure itself that the terms of a settlement are fair and reasonable in an FLSA case. See, e.g., Souffrant v. 14-15 Mertens Place Corp., No. 19-cv-5482, 2020 WL 1166231, at *2 (S.D.N.Y. March 11, 2020) (citing Cheeks, 796 F.3d at 206). Here, the settlement was reached through good faith negotiations, and the fact that the parties reached that agreement with the assistance of a neutral mediator is a strong indicator of reasonableness. See, e.g., Zhang v. Joy's Hair Studio, Inc., No. 13-cv-3220, 2016 WL 3582044, at *1 (E.D.N.Y. June 27, 2016). The Court is confident that the settlement reflects an arms' length agreement in which both sides' counsel diligently and vigorously represented their respective clients. Additionally, plaintiffs have agreed that, of the $70,000 settlement fund, $25,110.90 will be issued to plaintiffs' counsel. That represents a one-third contingency fee plus costs, a reasonable fee given that "[c]ontingency fees of one-third in FLSA cases are routinely approved in this Circuit." Yunda v. SAFI-G, Inc., No. 15-cv-8861, 2017 WL 1608898, at *4 (S.D.N.Y. Apr. 28, 2017) (colleting cases). Therefore, considering the relevant factors, I find that the settlement is fair and reasonable.

## CONCLUSION

Plaintiffs' motion for an order of settlement and dismissal [35] is granted as set forth above. The Court finds that the parties have settled and that the settlement is fair and reasonable.

Therefore, the case is dismissed as settled, and the Court will retain jurisdiction to enforce the terms of the settlement.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
September 9, 2021